Unified Judicial System

 

 
 Robert Schneider
Claimant and Appellee v.
South Dakota Department of Transportation
Employer and Appellant [2001 SD 70]
South Dakota Supreme Court
Appeal from the Circuit Court of The Sixth Judicial Circuit
Mellette County, South Dakota
Hon. Max A. Gors, Judge
Alicia D. Garcia and Michael Abourezk of Abourezk Law Firm Rapid City, South Dakota
Attorneys for claimant and appellee
 
Robert B. Anderson of May, Adam, Gerdes and Thompson Pierre, South Dakota
Attorneys for employer and appellant
 
Considered on Briefs October 24, 2000
Reassigned 1/3/2001
Opinion Filed 5/30/2001
#21412
AMUNDSON, Justice
[Â¶1.] Robert Schneider (Schneider) suffered an injury to his back while chopping wood at his home on November 11, 1993.  On January 27, 1994 Schneider was operating a snowplow when he reported a sudden onset of pain in his back.  He has not worked since.  The Department of Labor (Department) found that Schneider was not entitled to workersâ compensation benefits.  The circuit court reversed.  On remand, the Department determined that Schneider was entitled to total disability benefits.  The circuit court affirmed.  We reverse.
FACTS
[Â¶2.] Schneider was employed by the Department of Transportation (DOT) from 1988 until January 1994 as a highway maintenance worker.  On November 11, 1993, Schneider injured his back while home chopping wood during his holiday vacation.  As a result, Schneider saw physical therapist Kelly Coleman on December 14, 1993.  Schneider âcomplained of back and left hip and radicular leg pain.â  Schneider revisited Coleman five additional times for physical therapy treatments prior to January 27, 1994.
[Â¶3.] The purpose of the physical therapy was to decrease the pressure on the nerve rootlets by shifting the bulging disk.  Coleman noted some improvement after the first visit and after additional visits.  Schneider worked sporadically since the wood-chopping incident.  He worked the entire week of November 13-19, took leave November 22 and 23, plowed snow November 24 for 3.5 hours then used sick leave for the rest of the day, he did not work at all the week of January 3 through 7 and January 10 to 14.[1]   Coleman stated that Schneiderâs problems were not cured or eliminated and âonce you have a bulge and have a weakness like that, it never does return to a normal state.â  This is confirmed by the fact that after returning to work on January 18 he used four hours of leave January 19 because of back pain and missed all of January 21 because of back and leg pain.[2] 
[Â¶4.] On January 27, 1994, while driving a snowplow Schneider testified that âI had hit a snowdrift, or something of that nature, and I felt a sharp pain.â[3]   Schneider called his supervisor and told him that driving the plow was hurting his back and he could not continue.  Despite his claim that he was hurt, he completed his route and returned to the DOT garage.  He has not worked since.
[Â¶5.] On February 4, 1994, Schneider sought medical care for his back and leg problems at the Veteranâs Administration Hospital in Fort Meade, South Dakota.  He briefly discussed his medical history with Nurse Hickenbotham and advised her that he suffered severe pain in his back and leg and related it to the wood-chopping incident.  No mention was made of the events of January 27, 1994 with the snowplow.
[Â¶6.] Dr. Larry Teuber eventually diagnosed and performed surgery on Schneider to remedy a free-floating fragment in his back.  In relaying his medical history to Dr. Teuber, Schneider stated he was injured while driving sometime in 
December 1993 and January 1994.  Contrary to what he had told Nurse Hickenbotham, he also told Dr. Teuber âat no time in the past has he had left leg pain.â  The wood-chopping incident was never mentioned.
[Â¶7.] Schneider then visited Dr. Steven Goff for the purposes of impairment rating on March 23, 1995.  Schneider specifically attributed the source of his injury to the January 27, 1994 incident driving the snowplow for the DOT.  Consistent with what he told Dr. Teuber, but inconsistent with what he told Nurse Hickenbotham, Schneider failed to attribute any of his pain to the 1993 wood-chopping incident.
[Â¶8.] Following surgery, Schneider continued to experience substantial pain in his back and sought workersâ compensation benefits.  The Department denied benefits finding that:
1.         Claimantâs credibility is questionable and suspect because of information he either supplied or failed to supply.
 
2.         Claimantâs complaints of pain and physical disability were the same prior to January 27, 1994, as thereafter.
 
3.         Immediately after the alleged incident of January 27, 1994, Claimant continued to relate his physical problems to the âwood-splittingâ incident.
 
4.         At some later date, Claimant began to relate all of his problems to the alleged incident of January 27, 1994, and omitted all reference to the wood-splitting incident.
 
5.         Claimant has had continuous back and leg problems dating from the wood-splitting incident of November 11, 1993.
 
6.         Claimantâs hearing testimony that he is a poor historian of facts and simply failed to be articulate and complete lacks merit and credibility.
 
7.         Based on Claimantâs suspect testimony, conflicting evidence, and his lack of credibility in general, Claimantâs testimony is rejected concerning his alleged injury which occurred while driving a snowplow.
 
8.         Without an accurate knowledge of Claimantâs back injury of November 11, 1993, and condition thereafter, Dr. Teuber admitted that he could not be sure whether Claimant suffered from an aggravation or a recurrence of that back injury. . . .   The testimony of Dr. Teuber as it relates to [the snow plow incident] is also rejected, since it is lacking any credible basis.
 
9.         Colemanâs opinion was based in part on Claimantâs self reported complaints and history.  Since Claimantâs testimony concerning the events of his alleged injury have been rejected, Colemanâs opinion relating to Claimantâs condition . . . must be rejected.  Coleman did not state to a reasonable degree of medical certainty that Claimantâs condition was connected to the alleged incident of January 27, 1994.  Coleman only testified that there was a probability . . . and that testimony was based on incomplete and inaccurate information.
 
10.       Claimant has failed to establish by a preponderance of the evidence that he suffered an injury arising out of and in the course of employment with the DOT.
 
[Â¶9.] The circuit court reversed the Departmentâs decision finding that a work related injury did not occur and that the Departmentâs findings were not supported by substantial evidence or were clearly erroneous.  The circuit court found that Schneider established that an aggravation of an old injury occurred, and remanded to the Department for an award of benefits.
STANDARD OF REVIEW
[Â¶10.] We will overrule the Departmentâs findings of fact only if they are clearly erroneous in light of the entire record.  Kurtz v. SCI, 1998 SD 37, Â¶9, 576 NW2d  878, 882.  âThe test is whether after reviewing the evidence we are left with a definite and firm conviction that a mistake has been made.â  Truck Ins. Exch. v. Kubal, 1997 SD 37 Â¶9, 561 NW2d 674, 676 (citations omitted).  Whereas, conclusions of law are given no deference and are freely reviewable.  Kurtz, 1998 SD 37, Â¶9, 576 NW2d at 882.
[Â¶11.] We review the Departmentâs decision unaided by any presumption that the circuit courtâs decision was correct.  Id.  âIssues of causation in workersâ compensation cases are factual issues that are best determined by the Department.â  Therkildsen v. Fisher Beverage, 1996 SD 39, Â¶8, 545 NW2d 834, 836.  âDue regard shall be given to the opportunity of the agency to judge the credibility of the witness.â  Bonnett v. Custer Lumber Corp., 528 NW2d 393, 396 (SD 1995).
[Â¶12.]               1.         WHETHER THE CIRCUIT COURT ERRED IN
REVERSING THE INITIAL DECISION BY THE DEPARTMENT OF LABOR THAT SCHNEIDER DID NOT SUFFER AN INJURY IN THE COURSE OF HIS EMPLOYMENT WITH DOT.
 
[Â¶13.] âThe burden of proof is on [Schneider] to show by a preponderance of the evidence that some incident or activity arising out of [his] employment caused the disability on which the workerâs compensation claim is based.â  Kester v. Colonial Manor of Custer, 1997 SD 127, Â¶24, 571 NW2d 376, 381.  This level of proof âneed not arise to a degree of absolute certainty, but an award may not be based upon mere possibility or speculative evidence.â  Id.  To meet his degree of proof âa possibility is insufficient and a probability is necessary.â  Maroney v. Aman, 1997 SD 73, Â¶9, 565 NW2d 70, 73.
[Â¶14.] The Department found that no compensable injury occurred on January 27, 1994.  The findings of fact entered by the Department were based on a finding of a lack of credibility.  Just recently, this Court reiterated the notion that âwhere the claimantâs subjective experience of pain is central to the issue of whether recovery is warranted, the credibility of the claimant is always at issue.â  Lends His Horse, Jr. v. Myrl & Royâs Paving, Inc., 2000 SD 146, Â¶14, 619 NW2d 516; see also Johnson v. Albertsonâs, 2000 SD 47, 610 NW2d 449; Wagaman v. Sioux Falls Const., 1998 SD 27, 576 NW2d 237.  The Department, after hearing numerous inconsistent statements made by Schneider, found Schneider to be not credible.[4]   âWhere there are two permissible views of the evidence, the factfinderâs choice between them cannot be clearly erroneous.â  First Natâl. Bank v. Bank of Lemmon, 535 NW2d 866, 869 (SD 1995) (citations omitted).  âDetermining the credibility of the witnesses is the role of the factfinder.  Where the [Department] has resolved conflicts in evidence, we cannot change its findings.â  Mash v. Cutler, 488 NW2d 642, 653-54 (SD 1992) (citations omitted).  Our long-standing precedent is clear:  a claimant purporting to suffer from continuous and debilitating pain must be credible, and any medical diagnosis based on an inaccurate and incomplete medical history cannot insulate a claimant from the Departmentâs findings.
[Â¶15.] To affirm the decision of the circuit court, in essence, would allow Schneider to change course in midstream.   The number of inconsistent versions of his medical history provided the Department with the factual basis to characterize Schneider as not credible.  The version he gave to Nurse Hickenbotham compared to the version he gave to Dr. Teuber and then compared to the version given to Dr. Goff is sufficient evidence for the Department to deem Schneider not credible.  This comparison of historical accounts does not even consider Schneiderâs demeanor and what the Department observed at the hearing, which would only support the finding that Schneider was not credible.  This âchange in courseâ was recognized by the Department and is respected by this Court.
[Â¶16.] Furthermore, there was an inadequate foundation for the medical opinions expressed by Drs. Teuber and Goff as those opinions were based on Schneiderâs inaccurate and incomplete medical history.  âThe value of the opinion of an expert witness is no better than the facts upon which they are based.  It cannot rise above its foundation and proves nothing if its factual basis is not true.â  Johnson, 2000 SD 47, Â¶25, 610 NW2d at 455 (citing Podio v. American Colloid Co., 83 SD 528, 532, 162 NW2d 385, 387 (1968)).  In other words, medical testimony is only as credible as its foundation.  See Lends His Horse, supra.  Thus, the Department could reject both the live and expert testimony based on its finding that Schneider lacked credibility by giving an incomplete representation of his injuries.[5] 
[Â¶17.] After reviewing all the evidence, it cannot be said this Court is  âdefinitely and firmly convinced that a mistake has been made.â  Sopko v. C & R Trans. Co., Inc., 1998 SD 8, Â¶6, 575 NW2d 225, 228; see also Day v. John Morrell & Co., 490 NW2d 720, 723 (SD 1992).  Schneider has failed âto show by a preponderance of the evidence that some incident or activity arising out of his employment caused the disability on which the workersâ compensation claim is based.â  Kester, supra.  We reverse.
[Â¶18.]               2.         WHETHER THE CIRCUIT COURT ERRED IN
AFFIRMING THE DEPARTMENTâS DECISION ON REMAND THAT SCHNEIDER WAS PERMANENTLY AND TOTALLY DISABLED.
 
[Â¶19.] We need not address this issue as we reverse on Issue 1.
[Â¶20.] MILLER, Chief Justice, and GILBERTSON, Justice, concur.
[Â¶21.] SABERS and KONENKAMP, Justices, dissent.
 
SABERS, Justice (dissenting).
[Â¶22.] The majority opinion erroneously dismisses the medical testimony in this case based on perceived inconsistencies and a finding of suspect credibility.  Schneider testified that âI had hit a snowdrift, or something of that nature, and I felt a sharp painâ while driving a snowplow on January 27, 1994.  Schneider called his supervisor and told him that driving the plow was hurting his back and he could not continue.  After making numerous stops because of the pain, he eventually completed his route and returned to the DOT garage.  Schneider filed a report of injury which stated, âexperienced a severe pain in lower back, left hip, left leg while driving truck to plow snowâ that âoccurred while driving truck to plow snow.â  He has not worked since.
[Â¶23.]  The Department denied benefits finding that:
1.         Claimantâs credibility is questionable and suspect because of 
information he either supplied or failed to supply.
 
2.         Claimantâs complaints of pain and physical disability were the 
same prior to January 27, 1994, as thereafter. 
     
[Â¶24.] The circuit court reversed the Departmentâs decision finding that:
 
1. The evidence is not disputed that claimantâs back condition 
became worse after the incident where he reported pain in the 
course of driving and operating the snowplow on January 27, 
1994, as compared with the symptoms and physical conditions 
observed by his physical therapist prior to the January 27 
injury.
 
2. The court does not rely on Schneiderâs credibility in any way in 
finding that the claimant was diagnosed with only a bulging 
disk prior to January 27, 1994, when he was diagnosed with a 
free fragment that had completely left the disk space and was 
pressing on the nerve.
 
3. Subsequent to the snowplow incident on January 27, 1994, 
claimant has never been able to reach the level of improvement 
and recovery that he attained after his wood chopping injury.
 
4. The conclusion drawn by the Department . . . is not supported by 
any substantial evidence. 
 
The circuit court determined that a work related injury did occur and that the Departmentâs findings were not supported by substantial evidence or were clearly 
erroneous.  The circuit court found that Schneider established that an aggravation of an old injury occurred, and remanded to the Department for an award of benefits.
[Â¶25.] It is incumbent upon Schneider to establish a causal relationship between his injury and his employment to collect workersâ compensation benefits.  See Gilchrist v. Trail King Industries Inc., 2000 SD 68, Â¶7, 612 NW2d 1, 2.  This requirement does not mean that Schneider must show âthat his employment was the proximate cause, direct, or sole cause of his injury; rather [he] must show that his employment was a âcontributing factorâ to his injury.â  Id. (citation omitted).  âIt is sufficient that the disability âwas brought on by strain or overexertion incident to the employment, though the exertion or strain need not be unusual or other than that occurring in the normal course of employment.â  Tischler v. United Parcel Service, 1996 SD 98, Â¶27, 552 NW2d 597, 603.  
[Â¶26.] âThe burden of proof is on [Schneider] to show by a preponderance of the evidence that some incident or activity arising out of his employment caused the disability on which the workersâ compensation claim is based.â  Kester v. Colonial Manor of Custer, 1997 SD 127, Â¶24, 571 NW2d 376, 381.  This level of proof âneed not arise to a degree of absolute certainty, but an award may not be based upon mere possibility or speculative evidence.â  Id.  To meet his degree of proof âa possibility is insufficient and a probability is necessary.â  Maroney v. Aman, 1997 SD 73, Â¶9, 565 NW2d 70, 73.
[Â¶27.] The Department erroneously found that no compensable injury occurred on January 27, 1994.  The findings of fact entered by the Department were based on a finding of a lack of credibility.  While giving due regard to the Departmentâs determination on credibility, I agree with the circuit courtâs finding of error in the Departmentâs reasoning.  The Department determined that Schneider lacked credibility because of his conflicting historical accounts of the injury and his inability to describe what occurred on January 27, 1994.
[Â¶28.] The record indicates that Schneider had difficulty relaying his history of back problems to medical providers.  Yet, that finding does not defeat Schneiderâs claim out-of-hand.  Our inquiry is whether Schneider injured or aggravated a prior condition in the course of employment with the DOT.  Tischler, 1996 SD 98, Â¶28, 552 NW2d at 603.  Schneider must demonstrate that âthe strain of his employment was a contributing factor to his medical condition.â  Schuck, 529 NW2d at 899.  
[Â¶29.] In relation to the January 27, 1994 incident Schneider stated in his deposition that his back pain âjust more or less started.â  At the hearing, the following exchange occurred on cross-examination:
Q:        Do you really know what happened? Can you point to anything specific that happened that day that caused your back pain to start?
 
A:         It was the constant bounce, constant jar.  The plow is moving.  I had to have hit something or something because all of a sudden when my back and the leg pain, it shot to my toes.
 
Q:   But you canât remember anything in particular, can you?
 
A:                                 Sir[,] as far as?
 
Q:        Any incident that actually happened to bring on this back and leg pain?
 
A:                                  Any incident?
 
Q:        Any particular thing?  You canât really remember hitting anything with your truck or anything else, can you?
 
A:      Yes, I can, sir, because I had to pull my truck over.
 
Q:        At your deposition I asked you that question and I said, was there anything you can point to that brought that on, and Iâm thinking of a particular incident.  Your answer was I donât understand that, sir.  And I asked another question, I mean had you had something hit your leg?  Had you bent over, had you lifted something, had your truck hit something, was there anything that seemed to cause it or did it just start?  Your answer was it more or less started.  That is how you answered the question then do you have a different recollection now about what happened?
 
A:         All I knowâI remember the sharp pain.  I remember taking my truck to the side of the road, locking my air brakes, having my safety lights all on, which they would be on and I had to dismount my truck.
 
Based on a comparison of Schneiderâs testimony at the hearing to his deposition testimony, the Department erroneously found that he lacked credibility. 
[Â¶30.] The Department erred by utilizing this perceived inconsistency to dismiss evidence that Schneiderâs condition was worsened by this incident.  I acknowledge that â[i]t is incumbent upon the circuit court to be duly aware of the opportunity of the Department to judge at first hand the credibility of the witness.â  Lends His Horse, 619 NW2d at 520.  Yet, the majority opinionâs reliance on Lends His Horse is misplaced.  Lends His Horse does not dictate that we reject out of hand a workerâs compensation claim when there is a finding of lack of credibility.  While subjective experiences of pain are always at issue, the majority opinion forgets that so is medical evidence.  The Department overlooked evidence relating to the accident report filed by Schneider, the worsening of Schneiderâs medical condition, the medical testimony of Coleman who treated Schneider both before and after January 27, 1994, and Dr. Teuberâs opinion that driving the snowplow aggravated the condition.
[Â¶31.] When evidence on the issue of causation is submitted to the Department in deposition form âwe review that testimony de novo and we are unhampered by the clearly erroneous rule.â  Tischler, 1996 SD 98, Â¶24, 552 NW2d at 602.  âThis means that we will decide for ourselves the credibility of the deponent and the weight and value to be attached to their testimony.â  Id.
[Â¶32.] Dr. Teuber stated on deposition that he believed that an aggravation of
the prior injury occurred while operating the snowplow after the wood-chopping incident.  He stated that simply driving a snowplow could cause the type of movement that can aggravate a pre-existing disc problem.  Additionally, Coleman stated on deposition that Schneiderâs condition had become worse after January 27, 1994.  He stated that it was probable there was an initiating event that aggravated this condition and it just does not happen on its own.  Specifically, it was probable the work incident was the contributing factor to his current level of disability.  
[Â¶33.] The testimony of the medical experts establishes that Schneider was initially diagnosed as suffering from a bulging disc.  After January 27, 1994, the date of the snowplow incident, Schneider was diagnosed as experiencing a free-floating fragment in his back that required surgery.  In addition, the testimony establishes that Schneiderâs level of pain increased after the snowplow incident.   As recognized by the trial court, âthe evidence is not disputed that claimantâs back condition became worse after the incident where he reported pain in the course of driving and operating the snowplow on January 27, 1994, as compared with the symptoms and physical conditions observed by his physical therapist prior to the January 27 injury.â  The Department was clearly erroneous in determining that Schneiderâs complaints were unchanged after January 27, 1994.
[Â¶34.] There was an adequate foundation for these medical opinions and the Department was clearly erroneous in determining that Schneider did not establish a causal connection between his employment and his injuries.  The evidence produced at the hearing provided support that the operation of the snowplow was a contributing factor to this injury.  I am definitely and firmly convinced a mistake has been committed and I dissent.
[Â¶35.] KONENKAMP, Justice, joins this dissent.

[1].         At the Departmental hearing Schneider stated âI missed a few days, I mean, I canât say exactly the amount of days I missed.â  In reality, Schneider missed 27 days of work between November of 1993 and January 1994.  On his absence slips he wrote that his absence was attributable to âa pinch nerve in his back.â
 

[2].         Schneider testified at the Departmental hearing he only had âminor pains, nothing, that, you know, when I injured it.â  The accuracy of this statement is not reflected by his use of sick leave because of âa pinch nerve in his back.â
 

[3].         During his deposition testimony on November 4, 1998 Schneider stated that âit just more or less startedâ in response to the question of what caused the injury.  On cross-examination at the Department hearing, he could not pinpoint exactly when the pain began despite his claim on direct examination that it happened after hitting a snowdrift.

[4].         In the Departmentâs original Findings of Fact, dated April, 17, 1997, the Department found:
                        17.       Based on Claimantâs hearing testimony, the Claimantâs deposition testimony, and the opportunity to observe the Claimant testifying at the hearing, this Department finds that the Claimantâs testimony concerning the alleged incident of January 27, 1994, is not persuasive, is lacking in credibility, and does not satisfy the Claimantâs burden of proof or persuasion. 
. . . . 
21.       On February 4, 1994 (only one week after his alleged work-related injury of January 27, 1994), Claimant sought medical care for his back and leg problems at the Veterans Administration (VA) Hospital in Fort Meade, South Dakota. 
22.       On seeking medical care at the VA Hospital on February 4, 1994, Claimant initially discussed his pain complaints with registered nurse Darleen Hickenbotham, a VA employee. 
23.       When Claimant came to the VA clinic on February 4, 1994, with complaints about back and leg pain, Hickenbotham took a history from Claimant, and Claimant advised her that he had been having severe pain in his lumbar area with radiating pain down his left leg to the toe since November 11.  Claimant further told nurse Hickenbotham that he had been suffering from this pain since he injured himself splitting wood with an axe.  Claimant advised nurse Hickenbotham that he had been to physical therapy and had been seen by a chiropractor with no help.  Claimant further advised the nurse that he worked for the State and is not allowed to work in his present condition.
24.       Claimant never advised nurse Hickenbotham or anyone else at the VA Hospital on February 4, 1994, that he had been injured on the job with the DOT.  Nurse Hickenbotham confirmed Claimantâs failure to advise her of this, both verbally in her deposition testimony as well as in contemporaneous written records prepared by her on February 4, 1994.
25.       Nurse Hickenbotham referred Claimant to physicianâs assistant Ronald Johnson, also at the VA medical center, who in turn referred Claimant to VA physical therapy.  Physical therapy notes and Johnsonâs testimony for February 4, 1994, confirm that Claimant advised Johnson and physical therapy that he had injured his back on November 11, 1993, while splitting wood and that he had felt pain down his left leg.  Claimant never mentioned anything about injuring himself while driving a snowplow on January 27, 1994, or any other work-related injury to either PA Johnson or the VA physical therapy.
26.       On February 4, 1994, Claimant related physical problems he was suffering in regard to his leg and back to the incident in November 1993, when he was splitting wood at home.  He never related his problems to any work-related incident.  
. . . .
 
These findings seem to be ignored by the circuit court or at the very least not given the amount of deference required by prior case law.
 

[5].        The dissent disregards our long-standing precedent that credibility determinations are reserved exclusively for the Department.  This Court declines the dissentâs invitation to supplant its own judgment for that of the Departmentâs.  The strained result on credibility reached by the dissent is not the function of this appellate court.